No. 28,870.

In re Petition of JOHN TIMM for a Writ of Habeas Corpus.

(281 Pac. 863.)

Opinion filed November 9, 1929.

*J. K. Codding,* of Leavenworth, for the petitioner and appellant.

*William A. Smith,* attorney-general, *R. O. Mason,* assistant attorney-general, *E. T. Bloomer, Jesse A. Hall,* county attorneys, and *Harry V. Howard,* of Arkansas City, for the respondent and appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an appeal by the petitioner, John Timm, from the ruling of the district court of Leavenworth county, sustaining a motion to quash the writ in a habeas corpus case because of the insufficiency of the petition. The petition shows that John Timm was charged and tried in the district court of Cowley county with and for the crime of murder, and was on November 16, 1914, acquitted on the ground of insanity and committed by that court to the hospital for the dangerous and criminal insane in the state penitentiary at Lansing, there to be kept and treated until liberated therefrom as provided by law. The petition further shows that the board

of administration appointed a commission to examine his sanity, and after doing so, on August 12, 1927, reported to the board that it found him to be sane; that the warden of the penitentiary also certified to the board that he found him to be sane and that no person would be injured by his liberation. The petition further alleges that the warden refuses to release him, and that the board of administration is successor to the board of correction, which latter board was enjoined and restrained by the district court of Shawnee county on November 27, 1918, from releasing this petitioner because section 1 of chapter 339 of the Laws of 1915 was unconstitutional, and for that reason "this petitioner cannot appeal to said board for his release under chapter 339."

The following order of the board of administration, dated August 17, 1927, is set out in the abstract as if attached to the petition:

"Ordered, by the state board of administration that, inasmuch as a special commission appointed by the state board of administration consisting of Drs. M. L. Perry, F. A. Carmichael and S. L. Axford, to examine into the sanity of certain inmates of the hospital for dangerous and criminal insane, have made their examination of John Timm and H. D. Wilson and find these inmates at this time sane; the warden of the state penitentiary notify the proper authorities of the counties from which these subjects were committed to the hospital for dangerous and criminal insane that these inmates are now sane in order that said county authorities may return them to their proper jurisdictions for trial, or for such disposition of their cases as may be deemed lawful and wise by the proper authorities of said counties."

The contention of the respondent is that the petition is insufficient to support a writ of habeas corpus and that chapter 339 of the Laws of 1915 is unconstitutional, as was held by the district court of Shawnee county, and that the law of 1911 which it attempted to repeal is still in force, which limits the matter of liberation of this petitioner to the district court of Cowley county where the criminal action was tried and from which the commitment was issued.

We think the petition was insufficient and the ruling of the trial court should be affirmed, not because chapter 339 of the Laws of 1915 is or was unconstitutional, but because the petitioner "has not attempted a compliance with its provisions," as was said in the case of *In re Ostatter, Petitioner,* 103 Kan. 487, 175 Pac. 377. He attempts to excuse himself from so doing on account of the injunction restraining the board of correction from issuing an order discharging him, and states that on that account he cannot appeal to the board of administration, its successor, for relief. The law of 1915 has since been repealed by the revision of 1923 and the law amended by

substituting the name of the board of administration for the board of correction; and, further, the board of administration evidently did not regard itself as being enjoined when it made the order of August 17, 1927, above quoted, whether done on the request or appeal of the petitioner or some one else. The order it made was under R. S. 62-1531, instead of 62-1532, the former relating to cases where no trial except as to sanity had been held, and where the inmate must upon restoration of sanity be turned over to the proper officers of the county from which he was committed to answer the charge against him. This petitioner had been tried and acquitted. He was a free man except he was being held on account of his deranged mental condition, and when restored he is not to be returned to the officers of Cowley county but to have his absolute freedom because he stands acquitted of the crime once charged against him.

The order which the board should have made, if in its judgment the facts and circumstances would have justified it, was under R. S. 62-1532, the concluding part of which is as follows:

"No such person shall be liberated from such institution except in pursuance to an order made by the state board of administration after a full hearing and a finding and determination by said board that such person is wholly recovered and restored to his or her right mind and that no person will be endangered by his or her discharge, and upon such finding and determination such person shall be entitled to immediate discharge."

We need not here consider whether the law of 1915 is unconstitutional or not. It has since been repealed by the revision of 1923, and the law of 1911, which it attempted to repeal, has also been repealed by the revision.

"All acts of a general nature, not enumerated in section 1 of this act, are hereby repealed upon the publication of the Revised Statutes of 1923." (R. S. 77-114.)

"The repeal of acts and parts of acts herein provided for shall not revive any law hereto repealed . . . nor shall such repeal affect any suit or prosecution pending at the time it takes effect, for an offense committed or forfeiture incurred under any of the acts repealed, except that the proceedings therein shall, when necessary, conform to the provisions of the Revised Statutes." (R. S. 77-110.)

It is argued that if the repealing law is invalid, the law it attempted to repeal still exists and remains in force and that the law of 1911 should control in this case. It provided that "No such person so acquitted shall be liberated therefrom, except upon the order of the court committing him thereto and until the superin-

tendent of the said asylum for the dangerous insane shall certify in writing to such committing court that in his opinion such person is wholly recovered and that no person will be in danger by his discharge." (Laws 1911, ch. 299, § 5.)

Respondent applies the same reasoning to the revision of 1923, claiming it is unconstitutional because it attempts "to convey judicial powers upon a purely administrative board." The law of 1911 authorized the court issuing the commitment to hear the evidence of restoration to sanity and pass upon the same, and the revised statute assigns that duty to the board of administration. Is this matter a judicial duty? Where was this duty reposed prior to 1911? For at least ten years prior to 1911 the entire matter of custody, care and discharge of insane persons was in charge of the board of administration (R. S. 76-135), and the fact that by statute it was in this particular class of cases for a period of four years made a duty of the trial court to hear and determine the question of restoration does not necessarily make it a judicial duty. This change or transfer of duty from the board to the court by the law of 1911 was referred to in *In re Clark*, 86 Kan. 539, 121 Pac. 492, as a change of procedure, and it was there held that such change did not affect the validity or constitutionality of the act.

"The statute merely provides a new procedure for the restraint, care and treatment of a class of the insane. It would be strange if the legislature could not change the procedure affecting insane people, or if such new procedure could not relate to persons thus afflicted before the passage of an act authorizing the inquiry." (p. 541.)

To change the procedure back to the board where it had theretofore been would in like manner be a mere change of procedure, and when the revision was made in 1923 the duty of hearing and determining the question of restoration was reposed in the same board, which had by statute been charged with that duty for eighteen of the twenty-two years immediately preceding the revision.

Applying the definitions of judicial functions or powers given in 6 R. C. L. 160 and other authorities cited, we think this matter is far from being a judicial function. It does not involve any question of law or discretion. It is a question of fact. Has the petitioner been restored to sanity? Physicians and other experts are called as witnesses to give their opinions after examination and observation. If the court should hear and determine it, a jury not necessarily of twelve would be called to determine the matter from those opin-

ions. Instead of such jury the board of administration is authorized to hear and determine the fact as to restored sanity. Restoration is quite different from commitment on a finding of insanity in that some one is by the latter proceeding deprived of his liberty and possibly deprived of the control of his property. Of course the public is to be protected by preventing the release and discharge of one not fully restored and who might put others in danger by his release. But no good reason has been suggested why the board of administration could not after a full hearing protect the public fully as well as a court, and possibly better by having a larger experience with such matters and better opportunity for observation of mentally abnormal persons.

It is further urged that the revised section is invalid because it does not provide for a notice to be given to all interested parties. It does require the board to give "a full hearing," which would be one affording a reasonable opportunity to all interested parties to appear and be heard.

We hold that there is nothing to prevent the petitioner from appealing to the board of administration under the provisions of the revised statute, and because he did not fully comply with the provisions of that statute in this case the motion to quash the writ was properly sustained.

The judgment is affirmed.